UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

GREGORY T.,                         )
                                    )
        Plaintiff            )
                                    )
v.                                  )     No. 1:17-cv-00445-LEW
                                    )
NANCY A. BERRYHILL,                 )
Acting Commissioner of Social Security,  )
                                    )
        Defendant            )

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erroneously found that he had the ability to ambulate effectively, as a result of which his left leg impairments did not meet the criteria of Listing 1.02(A), Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), failed to consider his nonexertional impairments of an inability to balance and a slow pace of learning new information, and erroneously deemed him capable of working a full eight-hour day and 40-hour workweek. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 15) at 3, 11, 15. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

The decision in question was issued following this court's remand of a prior decision of the commissioner for failure to address any of the nonexertional limitations identified by experts who assessed the plaintiff's physical residual functional capacity ("RFC"). *See* Record at 452, 564, 568-69. In the wake of that remand, the Appeals Council directed the ALJ to offer the plaintiff an opportunity for a new hearing, take any further action needed to complete the administrative record, and issue a new decision. *See id.* at 573. The ALJ convened a hearing at which both the plaintiff and a vocational expert testified. *See id.* at 452.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 30, 2020, Finding 1, Record at 455; that he had the severe impairments of unequal leg length (left leg shorter than right leg), left leg hemiparesis and hemiplegia, left hip deformity, asthma, borderline intellectual functioning, cognitive disorder, and learning disorder (including reading, written expression, and mathematics learning disorder), Finding 3, *id*.; that he had no impairment or combination of impairments that met or medically equaled the criteria of any of the Listings, Finding 4, *id*. at 456; that he had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that he could never climb ladders, ropes, or scaffolds, could occasionally crawl, balance, stoop, crouch, or kneel, could occasionally climb ramps or stairs, could only occasionally perform foot control operations with his left lower extremity but could push no greater than 20 pounds when doing so, could be exposed to only occasional extreme cold or extreme heat, needed to avoid concentrated fumes, odors, dust, gases, poorly ventilated areas, or concentrated chemicals, needed to avoid hazards such as moving machinery on the work floor and unprotected heights, could not ambulate over irregular or sloping

work surfaces or wet work surfaces, was limited to simple, unskilled work in a low-stress job, defined as occasional decision-making and occasional changes in the work setting, and could have only occasional interaction with the public, Finding 5, *id*. at 458-59; that, considering his age (five years old, defined as a younger individual, on his alleged disability onset date, July 1, 1993),[2] education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 466-67; and that he, therefore, had not been disabled from July 1, 1993, through the date of the decision, October 17, 2016, Finding 11, *id*. at 467-68. The Appeals Council declined to assume jurisdiction of the case following remand, *id.* at 442-45, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.984(a), (b)(2), 416.1484(a), (b)(2); *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of

---

[2] The plaintiff has not argued that a different standard should have been applied to determine whether he was disabled during the period when he was a child. *See* Statement of Errors at 3-16.

the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 3 of the sequential evaluation process, at which step a claimant bears the burden of proving that his impairment or combination of impairments meets or equals a listing. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Dudley v. Sec'y of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairments must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). To equal a listing, the claimant's impairments must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

## I. Discussion

### A. Step 3: Listing 1.02(A)

The plaintiff first contends that the ALJ erroneously found that he had the ability to ambulate effectively, as a result of which his left leg impairments did not meet or medically equal Listing 1.02(A). *See* Statement of Errors at 3-11. Listing 1.02(A) requires the following showing:

> 1.02 *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

Listing 1.02(A). In turn, the phrase "inability to ambulate effectively" is defined as follows:

> (1) *Definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity

functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .

(2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Listing 1.00(B)(2)(b).

The ALJ found that the plaintiff had not shown an inability to ambulate effectively, explaining:

In this case, the [plaintiff]'s left leg is shorter than [his] right leg and he utilizes a left leg brace and orthotic insert in his left shoe to try to compensate for this disparity. This results in a chronically antalgic gait on [his] left side, even with the use of these assistive devices. However, there is no indication from the record that the [plaintiff] needs to use any hand-held assistive devices when ambulating. In addition, while the [plaintiff]'s representative argues that the evidence clearly shows that [he] is incapable of walking a block at a reasonable pace on rough or uneven surfaces, the undersigned does not concur with this assessment. While the evidence of record does make numerous references to an antalgic gait, this by itself does not establish an inability to ambulate effectively, particularly considering the [plaintiff]'s activities of daily living. The [plaintiff] testified that he worked part-time at a gas station pumping gas for several years until 2014. While [he] did allege he took breaks when not assisting customers, the fact that [he] could perform this part-time work supports a finding that he did not suffer from an extreme limitation in his ability to walk. [His] part-time work as a flagger for the fire department provides further support for this assessment. While this work is only part-time, it involves directing traffic, setting up traffic cones, and assisting town firefighters as needed. Again, this work is inconsistent with an extreme limitation in the ability to walk. Finally, the [plaintiff] also performs part-time work as a driver, where he picks up low-income or disabled individuals and takes them to appointments. Again, the ability to perform this work, even part-time, is inconsistent with an extreme limitation in the ability to walk as defined within 1.00B2b. Therefore, the undersigned finds that the [plaintiff] does not meet or medically equal the requirements of listing 1.02.

Record at 457.

The plaintiff complains that the ALJ erred in (i) rejecting his contention, at Step 3, that he was incapable of walking a block at a reasonable pace on rough or uneven surfaces and yet concluding, at Step 4, that he could not ambulate over wet, uneven, or irregular work surfaces, (ii) relying on his performance of activities that are not inconsistent with his asserted inability to ambulate effectively, and (iii) failing to adopt opinions or findings of treating physician Maria Noval, M.D., and agency examining consultants George R. Kousaie, M.D., and Robert N. Phelps Jr., M.D. *See* Statement of Errors at 6-10.

As a threshold matter, as the commissioner observes, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 17) at 3, the plaintiff fails to make a *prima facie* case that his impairments satisfied the requirements of the introductory paragraph of Listing 1.02(A), *see* Statement of Errors at 3-11; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (in order for a claimant "to show that his impairment matches a listing, it must meet *all* of the specified medical criteria"; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify") (emphasis in original) (citation and footnote omitted). The ALJ did not concede that the requirements of the introductory paragraph were met; rather, he did not find it necessary to reach that question. *See* Record at 456-57.

The plaintiff's counsel attempted to make that showing for the first time in rebuttal at oral argument; however, assuming *arguendo* that this showing was not made too late, it is too little. The plaintiff's counsel identified no "*findings on appropriate medically acceptable imaging* of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." Listing 1.04(A) (emphasis added). That is fatal to the plaintiff's bid for remand on this basis. *See, e.g., Langley v. Colvin*, No. 1:16-cv-00064-JDL, 2016 WL 7477537, at *2 (D. Me. Dec. 29, 2016) (rec. dec.,

*aff'd* Feb. 10, 2017) (claimant's failure to argue how his degenerative disc disease met all of the elements of Listing 1.04 was "sufficient to require rejection of" his bid for remand on the basis of the ALJ's asserted error in not finding that listing met); *Swain v. Astrue*, No. 2:10-cv-325-DBH, 2011 WL 2559538, at *3 (D. Me. June 27, 2011) (rec. dec., *aff'd* July 15, 2011) ("In the absence of any explanation of *how* the [l]isting is equaled, the court will not consider this argument.") (emphasis in original).

In any event, even if the plaintiff had succeeded in making this showing, his challenges to the ALJ's finding that he did not demonstrate an inability to ambulate effectively fall short.

First, as the commissioner persuasively argues, *see* Opposition at 10, the ALJ's rejection at Step 3 of the plaintiff's contention that he was incapable of walking a block at a reasonable pace on rough or uneven surfaces did not plainly conflict with his assessment at Step 4 of a limitation against ambulating over irregular, sloping, or wet work surfaces. At Step 4, the ALJ was tasked to determine the "sustained work-related physical and mental activities [the plaintiff could perform] in a work setting on a regular and continuing basis." Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2018) ("SSR 96-8p"), at 142. In turn, "[a] 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* An individual capable of walking a block at a reasonable pace on rough or uneven surfaces would not necessarily be capable of ambulating over such surfaces on a regular and continuing basis.

Second, the plaintiff's challenge to the ALJ's partial reliance on his activities is also unavailing. The plaintiff asserts that (i) there is no evidence that his part-time work as a driver involved standing or walking, (ii) he testified that he only flagged when the Fire Department responded to a call, which had happened only once the prior month, was accompanied by someone

who could help him out, and usually could flag for only about half an hour before needing a break because his legs got tired, and (iii) he testified that when he worked pumping gas, he did so only for four hours a day, five days a week, had breaks, and could sit down in between serving customers. *See* Statement of Errors at 7-8. However, as the commissioner notes, *see* Opposition at 9, the ALJ deemed the plaintiff's statements concerning his symptoms not entirely consistent with the medical and other evidence of record, *see* Record at 459, and the plaintiff has not separately challenged that finding, *see* Statement of Errors at 3-16.[3]

Third, and finally, the opinions and findings of Drs. Phelps, Noval, and Kousaie to which the plaintiff points, *see* Statement of Errors at 8-10, do not undermine the ALJ's Step 3 determination. The commissioner correctly observes that Dr. Phelps elsewhere addressed all examples of ineffective ambulation set forth in Listing 1.00(B)(2)(b), concluding that the plaintiff could perform each of the activities at issue. *See* Opposition at 5-6; Record at 740 (findings by Dr. Phelps that plaintiff could "perform activities like shopping," "ambulate without using a wheelchair, walker, 2 canes or 2 crutches," "walk a block at a reasonable pace on rough or uneven surfaces," "use standard public transportation," and "climb a few steps at a reasonable pace with the use of a single hand rail"). Against that backdrop, as the commissioner argues, *see* Opposition at 6, a "reasonable mind" is plainly not required to interpret the Phelps opinion as indicating that Listing 1.00(B)(2)(b) was satisfied.[4]

---

[3] Indeed, elsewhere in his decision, the ALJ expressly considered the testimony on which the plaintiff relies, concluding that the gas station job "involved a significant amount of standing" and that the flagger job, while part-time and allegedly involving frequent breaks, was a "position . . . performed primarily while standing[.]" Record at 460.

[4] Beyond this, as the commissioner notes, *see* Opposition at 7-8, the plaintiff does not challenge the ALJ's assignment of partial weight to (i) a physical RFC opinion of agency nonexamining consultant Richard T. Chamberlin, M.D., (ii) a report by agency examining consultant Patricia Thibodeau, P.T., and (iii) a functional capacity evaluation by physical therapist Anne Knowles, P.T., *see* Record at 461-62; Statement of Errors at 3-16. In determining the plaintiff's physical RFC, Dr. Chamberlin impliedly found that his impairments did not meet or equal a listing. *See* Record at 367-74; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). P.T. Thibodeau found that the plaintiff "definitely

8

While the plaintiff points to a treatment note of Dr. Noval indicating that he was dragging his right foot, *see* Statement of Errors at 9, he overlooks that Dr. Noval opined that he could stand and walk for four to six hours in an eight-hour workday, *see* Record at 439.[5]

Finally, as the commissioner observes, *see* Opposition at 6-7, to the extent that the plaintiff points to Dr. Kousaie's findings of significant left leg abnormalities and opinion that "[i]t would be difficult for [the plaintiff] to walk for any period of time[,]" Statement of Errors at 9 (quoting Record at 383), the Kousaie opinion is vaguely worded, begging the question of whether, regardless of the plaintiff's difficulty walking, he was "capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living[,]" Listing 1.00(B)(2)(b).

The plaintiff, accordingly, fails to demonstrate error in the ALJ's finding that his left leg impairments did not meet or equal Listing 1.02(A).

### B. Step 4: Omission of Nonexertional Limitations from RFC

The plaintiff next complains that, in assessing his RFC, the ALJ failed to account for his inability to balance or his slow pace of learning new information. *See* Statement of Errors at 11-14. This argument, as well, is unavailing.

---

ha[d] some work capacity" and "especially would be able to do jobs that require . . . standing for moderate periods of time, [and] walking for moderate periods of time." Record at 344. P.T. Knowles deemed the plaintiff capable of walking up to 33 percent of the day. *See id.* at 771.

[5] The plaintiff complains that the ALJ never mentioned the fact that he had undergone surgery to fix a broken right ankle and, thereafter, dragged his right foot while walking, which "would certainly add to [his] difficulties with effective ambulation." Statement of Errors at 9. At oral argument, his counsel elaborated that the ALJ mistakenly stated that the plaintiff had "a history of a remote *left* ankle fracture[,]" which the ALJ found nonsevere. Record at 456 (emphasis added). The error is harmless. As the commissioner notes, *see* Opposition at 6 & n.5, despite reviewing records indicating that the plaintiff was dragging his right foot, Dr. Phelps deemed him capable of performing the activities described in Listing 1.00(B)(2)(b), *see* Record at 732, 740. In addition, Dr. Noval found the plaintiff capable of standing and walking for four to six hours in an eight-hour workday. *See id.* at 439.

9

1. **Inability To Balance**

The plaintiff first contends that, in deeming him capable of occasional balancing, the ALJ failed to resolve a conflict in the opinion evidence, ignoring opinions of Dr. Phelps and P.T. Knowles that he could not balance. *See* Statement of Errors at 12, 14.[6]

As the commissioner observes, *see* Opposition at 11, any error is harmless. The ALJ relied at Step 5 on the plaintiff's ability to perform the representative jobs of bench worker, *Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed., rev. 1991) ("DOT") § 700.687-062, printed circuit board screener, DOT § 726.684-110, and electronic inspector, DOT § 726.684-050. *See* Record at 467.[7] The DOT indicates that, with respect to all three jobs, balancing is "[n]ot present – [a]ctivity or condition does not exist[.]" DOT §§ 700.678-062, 726.684-110, 726.684-050.

At oral argument, the plaintiff's counsel protested that the commissioner's harmless-error argument ran afoul of the so-called "*Chenery* rule." *See, e.g.*, *Day v. Astrue,* No. 1:12-cv-141-DBH, 2012 WL 6913439, at *10 (D. Me. Dec. 30, 2012) (rec. dec., *aff'd* Jan. 18, 2013) ("Pursuant to the rule of *SEC v. Chenery Corp.,* 332 U.S. 194 (1947), a reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of a rationale actually articulated by the agency decision-maker.") (citation and internal quotation marks omitted). However, as the commissioner's counsel rejoined, an argument that an error is harmless is not a bid for affirmance on the basis of a rationale not articulated by the decision-maker but, rather, an assertion that remand is unwarranted in the absence of harmful error. *See,*

---

[6] At oral argument, the plaintiff's counsel conceded that there was record evidence to support the ALJ's determination that plaintiff could occasionally balance.

[7] The ALJ mistakenly cited the bench worker job as "DOT 770.687-062[.]" *Compare* Record at 467 *with id*. at 522-23. I have corrected this apparent typographical error.

10

*e.g., Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").[8]

Remand, accordingly, is unwarranted on the basis of any error by the ALJ in assessing the plaintiff's ability to balance.

### 2. Difficulties in Pace of Learning New Information

The plaintiff next challenges the adequacy of the ALJ's determination of his mental RFC, asserting that, although there is evidence of record supporting that finding, the ALJ failed to address and resolve conflicting evidence regarding the pace at which he is able to learn new information. *See* Statement of Errors at 13-14. I find no error.

The plaintiff asserts that, although the ALJ purported to give "significant weight" to a May 25, 2005, neuropsychological evaluation by Christine M. Fink, Ph.D., he failed to include additional RFC limitations based on her observation that the plaintiff "appeared to forget what he was supposed to be doing" during the evaluation and her recommendations that he be "seated close to the source of information and away from distractions" and be given "[b]rief, simplified verbal instructions, followed by visual demonstration and modeling, and intensive guided practice[,]"

---

[8] The plaintiff's counsel further contended at oral argument that (i) the DOT does not address balancing, although he acknowledged that its companion book, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO") does, (ii) one of the three jobs, that of film touch-up inspector, referred to by the ALJ as an "electronic inspector," DOT § 726.684-050, requires occasional balancing, and (iii) the commissioner cannot demonstrate the harmlessness of any error in the absence of vocational expert testimony. These points, too, are unavailing. Whether the information is found in the DOT or the SCO is immaterial: the commissioner relies on both. *See, e.g.*, Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2018) ("SSR 00-4p"), at 242 ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO), for information about the requirements of work in the national economy."). The DOT listing for the job of electronic inspector indicates that no balancing is involved. *See* DOT § 726.684-050. In any event, even if that job were eliminated, the plaintiff has not argued that the remaining two jobs do not exist in significant numbers in the national economy. Finally, the commissioner did not err in relying on the DOT/SCO to demonstrate that any error was harmless. *See, e.g.*, SSR 00-4p at 242 ("Occupational evidence provided by a VE [vocational expert] or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT.").

with "[n]ew information . . . presented in short, well-organized learning trials." *Id*. at 13 (quoting Record at 204-05, 463).

He adds that, although the ALJ noted Dr. Fink's observations in a May 2013 neuropsychological evaluation that he was "severely impaired in his ability to mentally track and rapidly shift between cognitive response sets and showed evidence of a visual spatial impairment and a motor impairment[,]" he failed to factor them into his mental RFC determination. *Id*. at 13-14 (quoting Record at 464).

Finally, he contends that, although the ALJ gave a May 2016 opinion of Jonathan Freedman, Ph.D., "great weight" and noted that Dr. Freedman found that he could "only process so much information at one time[,]" the ALJ failed to account for that finding in his mental RFC. *Id*. (quoting Record at 464).

He cites *Ferguson v. Berryhill*, No. 1:16-cv-00489-DBH, 2017 WL 2417849 (D. Me. June 4, 2017) (rec. dec., *aff'd* June 20, 2017), for the proposition that remand is warranted when, absent recognition of conflicts in the evidence and resolution of the same, this court "cannot determine whether [a] decision is supported by *substantial* evidence, requiring remand." *Id*. at 14 (quoting *Ferguson*, 2017 WL 2417849, at *8) (emphasis in original).

As the commissioner persuasively argues, *see* Opposition at 13, *Ferguson* is materially distinguishable. Whereas, in *Ferguson*, the ALJ did not discuss several entire exhibits, and the claimant successfully rebutted the presumption arising from the presence of those exhibits on the ALJ's List of Exhibits that she had at least considered them, *see Ferguson*, 2017 WL 2417849, at *3-4, in this case, the ALJ discussed and weighed both the Fink evaluations and the Freedman opinion, *see* Record at 463-64. He deemed the portions of the Fink evaluations and Freedman opinion on which the plaintiff relies consistent with his RFC determination, *see id*., and it is not

self-evident that this was error. As the commissioner notes, *see* Opposition at 12-14, the 2005 and 2013 findings and recommendations of Dr. Fink and the vague Freedman opinion are not opinions as to RFC, which is defined as "the most you can still do despite your limitations[,]" 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). As a result, it is not clear that the ALJ was obliged to assess additional limitations to account for them. Indeed, Dr. Freedman's observation that the plaintiff could "only process so much information at one time[,]" Record at 464, begs the question of whether the plaintiff required limitations beyond those the ALJ assessed.

Accordingly, the plaintiff's challenge to the ALJ's handling of the issue of his difficulties with pace affords no basis for remand.

### C. Step 4: Inability To Work a 40-Hour Workweek

The plaintiff finally argues that the ALJ failed to recognize and resolve a conflict in the evidence as to whether he could work an eight-hour day and 40-hour workweek, warranting remand pursuant to *Ferguson*. *See* Statement of Errors at 15. Specifically, he faults the ALJ for failing to come to grips with opinions of Dr. Noval and Ms. Knowles that he was not capable of working on a regular and continuing basis. *See id*. at 15. Again, I find no error.

As a threshold matter, as the commissioner observes, *see* Opposition at 15, an opinion as to whether a claimant can work full-time is an opinion reserved to the commissioner, *see, e.g*., 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *Bailey v. Berryhill*, No. 2:17-cv-00080-DBH, 2017 WL 6590546, at *9 (D. Me. Dec. 26, 2017) (rec. dec., *aff'd* Feb. 12, 2018) (At bottom, "an opinion that a claimant can work only part-time implicates the overarching question of whether a claimant is disabled, an issue reserved to the commissioner with respect to which even opinions of treating physicians are not entitled to controlling weight or special significance.").

13

In any event, as the commissioner notes, *see* Opposition at 15-16, the ALJ expressly recognized and discounted both the Noval and Knowles conclusions, *see* Record at 461-63.

Remand, accordingly, is unwarranted on the basis that the ALJ erred in failing to resolve conflicts in the evidence concerning the plaintiff's ability to work full-time.[9]

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 16th day of November 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[9] The plaintiff does not contend that the ALJ's finding is unsupported by other opinion evidence. *See* Statement of Errors at 15-16. In any event, as the commissioner notes, *see* Opposition at 15-16, the ALJ gave great weight to the opinion of agency nonexamining consultant Brian Stahl, Ph.D., "who opined that the [plaintiff was] able to understand and remember simple instructions and tasks and work in two-hour blocks over the course of a normal workday or workweek[,]" Record at 465, and great weight to the opinion of Dr. Freedman, "who opined that the [plaintiff]'s persistence appear[ed] adequate for full-time work" and that his "ability to understand, concentrate, follow instructions, his memory, and his language abilities were suitable for unskilled, repetitive employment[,]" *id*. at 464.

14